In the Matter of JANESVILLE LODGING LIMITED, I.D.T., d/b/a Midway Motor Lodge, Theodore's Restaurant, The Restaurant Theodore's, Inc. of Madison, Debtor.

RCA CORPORATION, (RCA Service Company, a division thereof), a foreign corporation, Plaintiff,

v.

IDT INC., a Wisconsin corporation, d/b/a Midway Motor Lodge of Janesville, Defendant.

Adv. No. 83–0202–11.

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 20, 1983.

Francis J. Demet, Demet & Demet, S.C., Milwaukee, Wis., for plaintiff.

Mark A. Maasch, Van Metre, Hanson, Clarke, Schnitzler & Meyer, Madison, Wis., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This proceeding came before the court on the plaintiff's complaint for replevin of leased televisions and telephone equipment. After the parties pleaded the issues, the matter was tried to the court on December 12, 1983; the plaintiff appeared by its attorney Francis J. Demet, and the defendant appeared by its attorney Mark A. Maasch. Upon the evidence presented at trial I make

the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The plaintiff, RCA Corporation, is a foreign corporation authorized to do business in Wisconsin with its principal place of business at 3235 North 124th Street, Milwaukee. Plaintiff is engaged in the business of financing, leasing and servicing electronic equipment.

2. The defendant, ("IDT"), is a Wisconsin corporation formerly doing business as Midway Motor Lodge of Janesville with its principal offices located at 3910 Milton Avenue, Janesville, Wisconsin. Since February 1, 1983 IDT has been a debtor in chapter 11 in case no. MM11–83–00149 filed in this court.

3. On December 17, 1974 the parties executed a lease agreement dated December 5, 1974 wherein the defendant agreed to lease from the plaintiff 109 JT960 19" Solid State Color Receivers with 106 PD–75 Ped Stands and 106 SK–73 Security Kits (the "T.V. lease"). That lease provided that *inter alia:*

(a) Delivery could be made in installments,

(b) The lease was to become effective when executed by the lessee and RCA and continue 84 months after the date of completion of the installation of the equipment,

(c) The lessee was to pay an aggregate rental of $52,079.16 in 84 equal monthly installments. The first rental payment was due the day installation of the equipment was completed.

(d) Taxes were to be added to the rental amount, and

(e) In the event of termination prior to completion of the lease term, the lessee agreed to pay *inter alia* the reasonable rental for the equipment delivered, but there is no right upon termination to accelerate or demand payment of rentals for the remainder of the lease term.

4. On January 6, 1975 the parties agreed to make additions to the T.V. lease for background music and a page system, adding $4,116.00 to the aggregate rental. On that same date, they agreed to add a 3M music unit and one 24 hour tape and increase the aggregate rental under the T.V. lease by an additional $944.16.

5. The total aggregate rent to be paid under the T.V. lease as amended was $57,139.32. Sales tax due on rental payments constitutes an additional amount due under the T.V. lease.

6. The plaintiff delivered the T.V.'s and equipment and installed them. The first delivery consisted of approximately 70 television sets on or about September 1975. Additional television sets sufficient to bring the total sets delivered to approximately 109 were delivered shortly before June 1, 1976, on which date the delivery was certified to be complete.

7. Prior to complete installation of the leased equipment, from October 1975 to March 1976, the defendant made payments to RCA for the use of television sets in the amount of $372.00 per month. In April and May of 1976 the defendant made payments for the use of television sets in the amount of $375.00 per month. These use payments were not rental payments under the T.V. lease.

8. Defendant made total payments under the T.V. lease of approximately $55,139.74. Subtracting sales tax from the approximate total payments made by the defendant there appears to be a total payment against aggregate rental under the T.V. lease of approximately $52,780.00. The balance remaining due under the T.V. lease is approximately $4,360.00.

9. On January 16, 1975 the parties entered into a lease for certain telephone equipment dated December 13, 1974, ("the telephone lease") which called for a total aggregate rental of $69,630.00 payable in 120 equal monthly installments. The provisions of the telephone lease are, except for identification of the equipment, the number of payments called for and the amount of aggregate rental, essentially similar to the T.V. lease.

10. On January 16, 1975 the parties agreed to add additional equipment to the telephone lease thereby increasing the aggregate rental by $15,984.00. On May 6, 1976 the parties agreed to replace certain of the telephone equipment and reduce the aggregate rental by $4,280.40.

11. The total aggregate rental called for under the telephone lease as amended was $81,330.60. Sales tax due on rental payments constitutes an additional amount due under the telephone lease.

12. The defendant made total payments under the telephone lease of $58,181.06. Subtracting sales tax from the payments made by the defendant leaves a total payment against the aggregate rental under the telephone lease of approximately $55,-600.00. The balance remaining due under the telephone lease is approximately $25,-700.00.

13. No motion to assume or reject the subject leases has been made by any party nor has any motion been made to compel the assumption or rejection of the leases.

14. The defendant has made no payments under either lease since January 1983 but has continued to have the use of the leased items through the date of trial.

15. The T.V. lease expired by its terms 84 months after June 1, 1976, on June 1, 1983.

16. The T.V. lease made no provision for an extension of its terms or a renewal upon termination. No provision in the lease referred to the rights or obligations of a lessee holding over following the termination of the lease. No agreement was made between the plaintiff and the defendant prior or subsequent to June 1, 1983 with regard to the rights or obligations of the defendant with respect to the property leased under the T.V. lease.

## CONCLUSIONS OF LAW

█ 1. Because neither lease requires the payment of the entire value of the equipment in the event of default, *i.e.* there is no acceleration or "hell or high water" clause, each of the leases was on February 1, 1983, an unexpired true lease[1] which could be assumed pursuant to 11 U.S.C. § 365 upon order of the court after notice and a hearing.

█ 2. The time during which the T.V. lease could be assumed terminated on June 1, 1983 when the term of the lease expired.[2]

3. The defendant is in default on payments due under the T.V. lease by virtue of not paying six or more installments thereon between, January 1983 and June 1, 1983, and is indebted to the plaintiff for $4,293.60 calculated as follows:

| | |
|---|---|
| aggregate rental | $ 57,139.32 |
| + sales taxes, 4% to 06–01–83 | 2,205.59 |
| + sales taxes, 1% 05–01–82 to 06–01–83 | 88.43 |
| – payments | 55,139.74 |
| TOTAL | 4,293.60 |

4. The defendant has no right to purchase equipment under the terms of the T.V. lease or any rider thereto which might provide an option to purchase upon completion of payments under the lease.

---

1. This court has stated and refined a test for distinguishing a "true lease" from a lease for the purpose of security. *See United General Leasing, Inc. v. Gehrke Enterprises, Inc.,* 1 B.R. 647 (Bkrtcy.W.D.Wis.1979); *Livesey Enterprises v. Smith Management, Inc.,* 8 B.R. 346 (Bkrtcy.W.D.Wis.1980); and especially *In Re Berge,* 32 B.R. 370 (Bkrtcy.W.D.Wis.1983). *Cf.* WIS.STAT. § 401.201(37).

2. 11 U.S.C. § 365 provides for the assumption of an unexpired lease. Once a lease has expired it can be assumed only under the limitations of 11 U.S.C. § 108(b), which allows the debtor to cure a default before expiration of the agreement, or within 60 days after the commencement of the voluntary bankruptcy case, whichever is later. Thus, if a lease expires after the petition in bankruptcy is filed, but before 60 days have elapsed after the filing, the debtor has until the end of the 60-day period to cure a default. If the underlying agreement does not then give the debtor the right to extend his lease, the court may not create that right on his behalf. The debtor may assume an unexpired lease subject to the provisions of 11 U.S.C. § 365(b)(1).

676

■ 5. The plaintiff is entitled to possession of the property subject to the television lease and a claim with priority as an administration expense in the pending chapter 11 case for $4,293.60 rent and taxes incurred during the term of the lease.

■ 6. In the absence of any evidence as to the reasonable value of the use of the property subject to the T.V. lease after the termination of that lease, and in recognition of testimony concerning a lease option price of $1.00 per unit for items covered by that lease, plaintiff is entitled to a claim entitled to priority as a cost of administration for a rental of $.50 per unit per month for the 109 T.V., pedestal, and security units charged to the possession of the defendant from June 1, 1983 for so long as the debtor in possession continues to use those units and a rental of $.75 per item per month for items other than T.V. units, pedestals and security systems covered by riders to the T.V. lease.

7. The defendant is in default on the telephone lease by virtue of its failure to pay monthly rental payments due under that lease from January 1983 to date.

■ 8. The telephone lease is an unexpired lease which under 11 U.S.C. § 365, upon cure of defaults, payment of damages and assurance of future performance may be assumed by the debtor.

9. The default on the telephone lease can be cured by the payment of $10,104.97 representing unpaid rentals and costs to RCA by December 31, 1983, and any monthly payments called for under the lease thereafter.

■ 10. The reasonable time in which the debtor may move to assume the telephone lease is 20 days from the date an order based on these findings and conclusions is entered. Failure to move for assumption during that period shall be deemed a rejection of the telephone lease.

### ORDER

Upon the foregoing findings and conclusions IT IS HEREBY ORDERED THAT:

1. The plaintiff is entitled to possession of the property subject to the T.V. lease and a writ of replevin therefor may issue.

2. The plaintiff has an allowed claim in the defendant's chapter 11 case for $4,293.60 together with rentals due for the use of the equipment subject to the T.V. lease after June 1, 1983, as calculated under paragraph 6 of the conclusions of law herein, which claim is entitled to priority as cost of administration.

3. The last day on which the defendant may move to assume the telephone lease is the 20th day after the date of this order, and failure to so move shall be deemed a rejection of that lease.

Judgment may be entered accordingly.