**In re PRIME, INC., Debtor.**

**Bankruptcy No. 81–03200–S–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

March 21, 1984.

Gary A. Love, Springfield, Mo., for debtor.

Donald B. Steele, Kansas City, Mo., for Creditors CIT Corp. and CIT Financial Services.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtor filed for relief in October of 1981. At that time and to the present it owned certain over-the-road tractors and trailers in which CIT Corporation, hereinafter CIT, and CIT Financial Services, hereinafter Financial, have security interests. Prior to July 1983 no request for adequate protection was made by either creditor and debtor made no payments although it continued to use the vehicles. In July of 1983 both creditors asked that claims for moneys due under the financing agreements on the trucks

from the date of filing to July 1983 be allowed as administrative expenses. Debtor opposes such an allowance.

A hearing was held on the Motion. The parties appeared by counsel. Evidence was heard and the matter taken under advisement. The parties filed briefs in support of their contentions.

Section 503(b)(1)(A) of the Code provides that "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case" shall be allowed as administrative expenses. Creditors contend that, since debtor used the collateral, they are entitled to the payments called for in the financing arrangements or the reasonable rental value of the property as an administrative expense. Debtor argues that creditors contributed nothing to the estate since debtor owns the property and that the only remedy is adequate protection payments which creditors waived by not asking for them.

This section of the Code is drawn from Section 64(a) of the Bankruptcy Act, Section 104 of Title 11, U.S.C., now repealed, which provided, in part, that "the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition" are entitled to a first priority. Other categories included trustee's costs and expenses incurred in various kinds of legal proceedings. The Supreme Court has held that "the words preserving the estate include the larger objective, common to arrangements, of operating the debtor's business with a view to rehabilitating". *Reading Company v. Brown*, 391 U.S. 471, 475, 88 S.Ct. 1759, 1762, 20 L.Ed.2d 751 (1968). In that case the court specifically held that a claim for damages arising out of the trustee's negligence during the period of arrangement was entitled to a priority. In the case of *In re Avorn Dress Co.*, 78 F.2d 681 (2d Cir.1935) the court awarded a priority under Section 64a(1) of the Act to a claim held by a creditor who sold merchandise to a debtor who then resold the merchandise in its retail business. See generally 3A Collier on Bankruptcy ¶ 63.105 (14th Ed.).

■ Chapter 11 of Title 11 contemplates the operation of businesses while the cases are being administered. The laundry list of administrative expenses has been much simplified by the language of Section 503 but there is little question that the gloss on the predecessor statute has not been altered by the passage of the Code. House Report 95–595, 95th Cong., 1st Sess. (1977) 355 reprinted in App. 2 Collier on Bankruptcy (15th Ed.); 3 Collier on Bankruptcy ¶ 503.04 (15th Ed.). The costs and expenses of preserving the estate, therefore, are not restricted to the categories specified in the statute but also must deal with costs and expenses incurred in running the business.

■ The general proposition is that the estate is obligated to pay for collateral it controls and uses for the benefit of the estate. *Kneeland v. American Loan & Trust Co.*, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890). The analysis has been much refined since that opinion was written. In *Kneeland* the Court concluded that the estate had an obligation to pay for the collateral it possessed without regard to whether all of it resulted in benefit to the estate. But in *In re Rhymes, Inc.*, 14 B.R. 807 (Bkrtcy.Conn.1981) the Court held that no administrative rent was due where debtor never used the premises which it had leased. The issue, the court noted, is one of "preventing unjust enrichment rather than the compensation to the creditor for loss . . ." 14 B.R. at 808 citing *American A & B Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir.1960). The secured creditor is to be protected "throughout the proceedings, to the extent of the value of the property . . . There is no constitutional claim of the creditor to more than that". *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 278, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940).

■ There is no dispute that debtor has used the collateral in which the creditors hold security interests and that the use has resulted in benefit to the estate. The Court

holds that the creditors are entitled to some administrative allowance. The remaining question is the amount of such allowance.

■■■■ Where the debtor continues to operate its business after the filing of the petition, a creditor furnishing assets is to be paid in cash or in accordance with credit terms approved by the Court. Section 364 of the Code. If there is a default in this arrangement, the creditor is entitled to a priority claim. *Matter of Isis Foods, Inc.,* 19 B.R. 329 (Bkrtcy.W.D.Mo.1982). Where the asset is leased to the debtor, the unpaid rent is to be treated as an administrative expense. *Matter of Merchants Storage Co. of Va., Inc.,* 15 B.R. 448 (Bkrtcy.E.D.Va. 1981); *Matter of Fred Sanders Co.,* 22 B.R. 902 (Bkrtcy.E.D.Mich.1982).

In the transactions described above the amount of the administrative allowance is either the cost of the goods or the amount of the rent, *Matter of Fred Sanders Co.,* supra at 906, but this is not always so. But where the debtor owns the asset and the creditor holds only a security interest, the amount of the administrative claim, if any, for use of the collateral is more difficult to determine.

Creditors argue that they are entitled to the payments required by the loan documents or reasonable rent. As a third alternative they suggest an amount equal to depreciation. At the outset of a Chapter 11 case, the secured creditor is entitled to its collateral, *In re Prime, Inc.,* 35 B.R. 697 (Bkrtcy.W.D.Mo.1984), or to adequate protection. Section 362(e) of the Code. The essence of the arrangement is a balancing whereby the collateral maintains the value for which the creditor bargained and the debtor has the use of the collateral in its business.

■■■ In the absence of a demand by the creditor or voluntary payment by debtor the Court may not fashion adequate protection arrangements. *In re San Clemente Estates,* 5 B.R. 605 (Bkrtcy.S.D.Cal.1980). There has been no demand here. Allowance of an administrative claim in the amount of the debt payments therefore is

inappropriate, first because it gives creditors something they failed to request and second because the administrative claim is to be paid at confirmation and the debt payments contain a charge for interest over time, payment of which in a lump sum would be discriminatory in relation to the treatment of other secured creditors. An allowance based upon rental runs afoul of the same criticism. In addition there is no evidence which would enable the Court to conclude that the rental charge debtor makes to its drivers is the same which debtor would pay creditors for the collateral under a lease.

The administrative allowance is based upon what the creditor contributed to the ongoing business of the debtor. What the creditors contributed here was the value of their collateral over the period of use. That value is represented in money terms as the amount of depreciation suffered by the collateral from use and the passage of time. *In re Callister,* 15 B.R. 521 (Bkrtcy.Utah 1981). There is no evidence as to what those amounts are but they are susceptible to agreement or proof. Further hearing will be afforded at the request of the parties. The Court notes that if the proposed adequate protection agreement, not yet executed pays the claim, as opposed to the value of the collateral, no administrative claim will be allowed.

Creditors also seek an administrative claim for certain sums of money used by debtor at the time of filing which should have been turned over to creditors. The claim represents collections from accounts previously assigned to creditors. A part of the funds used has been allowed as an administrative expense. Since all of the post-petition debt to CIT has been paid, it may well be that the part previously allowed has been paid. It may be also that all of those funds used have been repaid. The evidence is insufficient to enable the Court to make a finding on the question.

Creditors are directed therefore, to make an accounting for the several days preceding and following the date of filing, a time period sufficient for the Court to determine

the precise status of the pre and post-petition debts. Such accounting is to be furnished the Court on or before April 13, 1984. Debtor is granted ten (10) days thereafter to make any challenge to the accounting.