**In re BRIGGS TRANSPORTATION CO., Debtor.**

**Bankruptcy No. 4–83–2083.**

United States Bankruptcy Court, D. Minnesota.

June 20, 1984.

See also, Bkrtcy., 39 B.R. 343.

William C. Hicks, Harstad & Rainbow, Minneapolis, Minn., for petitioner.

James A. Rubenstein, O'Connor & Hannan, Minneapolis, Minn., for respondent.

## ORDER DENYING REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the request of Ford Motor Credit Company (Ford Credit) for determination and payment of administrative expense claim. William C. Hicks appeared on behalf of Ford Credit and James A. Rubenstein appeared on behalf of the debtor.

■ Ford Credit requests that it be paid the amount that its collateral allegedly depreciated between the filing of the debtor's Chapter 11 case and the date it regained possession of its collateral. Ford Credit claims that amount is $24,850.00 but offered no evidence at the hearing to support that contention.[1] Thus Ford Credit's application fails for lack of proof of its claimed administrative expense.

■ However, Ford Credit's application also fails as a matter of law. I find no support for Ford Credit's application in the Bankruptcy Code and Ford Credit cites only one case for its proposition. *In re Peninsula Gunite, Inc.,* 24 B.R. 593 (Bkrcy. 9th Cir.1982). While dicta in *Peninsula Gunite* does seem to support the proposition of Ford Credit, no reasoning or support is given for the appellate panels

opinion in *Peninsula Gunite* and I think that if the bankruptcy appellate panel had squarely faced the issue, it would have agreed that there is no basis for such a claim.

The only statutory provision cited for the request is found in § 503(b)(1)(A). Ford Credit claims that depreciation of its collateral is an actual, necessary cost or expense of preserving the estate. However, Ford Credit misses the point of that section. Section 503 defines what expenses will be considered administrative expenses and thus entitled to a priority pursuant to § 507(a)(1). Thus the first hurdle that Ford Credit must overcome is to show that the debtor has incurred an expense. Then it can go on to try to show that it is a priority administrative expense. Section 503(b) is not intended to create expenses where they would not otherwise exist. It may be that Briggs benefited from the use of Ford Credit's collateral although that has not been proven either. Even if Briggs had benefited, it does not necessarily follow that Briggs has incurred an expense.

Congress has already dealt with this situation in another manner. It is, of course, the automatic stay provided in § 362(a) which prevented Ford Credit from repossessing its collateral. If Ford Credit had moved for relief from the stay, it would have been entitled to adequate protection or relief from the stay to repossess its collateral. Section 362(d)(1). One of the types of adequate protection that can be provided is periodic cash payments to the extent that the automatic stay results in a decrease in the value of the creditor's interest in the debtors property. Section 361(1). Likewise, pursuant to § 363(e), Ford Credit could have sought adequate protection of their interest as a condition to the debtor's continued use of its collateral. Specifically excluded from the examples of adequate protection which can be offered is the

---

1. At the conclusion of the hearing, the parties were asked to submit memoranda on the legal issues involved in Ford Credit's application. Ford Credit attached an affidavit which purports to provide evidence to sustain the claimed amount. However, any attempt to submit evidence after the conclusion of a hearing is inappropriate and the affidavit may not be considered in support of Ford Credit's application.

granting of an administrative expense under § 503(b)(1). § 361(3).

Thus it is clear to me that Congress intended to put the burden on the creditor to seek relief from the stay or otherwise demand adequate protection in order to receive adequate protection. Making such a request puts the onus on the debtor to decide whether or not to voluntarily give up the collateral or attempt to make the adequate protection payments in order to keep the collateral. Ford Credit delayed making any such requests until August; hearings were timely scheduled and the debtor finally determined that it did not wish to oppose the motion and consented to Ford Credit receiving relief from the automatic stay to repossess its collateral.

A contrary rule could create considerable problems. A creditor, or several creditors could either intentionally or unintentionally do nothing regarding seeking relief from the automatic stay or requesting adequate protection for a long period of time including up until a plan was proposed. Then long into the case, the creditors could step forward, make requests for payment of administrative expense which would at that point be a sum which the debtor would be unable to pay. Since § 1129(a)(9)(A) requires that all of these priority administrative expenses be paid in full on the effective date of confirmation, such creditors could effectively veto any plan.

The creditor delayed in making any requests and I think Congress intended the cost of such delay to be borne by the creditor, not the debtor.

THEREFORE, IT IS ORDERED:

The request of Ford Motor Credit Company for payment of administrative expense is denied.