In re ADVISORY INFORMATION AND MANAGEMENT SYSTEMS, INC., Debtor.

FIRST STATE BANK, Movant,

v.

ADVISORY INFORMATION AND MANAGEMENT SYSTEMS, INC., Respondent.

Bankruptcy No. 383–01846.

United States Bankruptcy Court, M.D. Tennessee.

June 27, 1985.

Alf Adams, Jr., Adams, Taylor, Philbin, Pigue & Marchetti, Nashville, Tenn., for First State Bank.

Randall Mashburn, Waddey & Jennings, Nashville, Tenn., for debtor.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

A creditor with a secured claim has moved for the allowance of an administrative expense based on the depreciation of its collateral between the date of the debtor's bankruptcy filing and the date the creditor was granted relief from the stay and repossessed its collateral. We hold that the creditor is not entitled to an administrative expense allowance.

This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (B). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I.

Advisory Information and Management Systems, Inc. ("AIMS") is in the electronic data processing business as an independent reseller of computer systems, peripheral equipment, components, software and related products. From September 1981 to July 1983, AIMS was a wholly-owned subsidiary of Southern States Corporation ("Southern"). In January 1982, Southern acquired the stock of Electronic Accounting Concepts, Inc. ("EAC"). The books and records of EAC were merged with those of AIMS. AIMS took possession of EAC's assets including equipment which served as collateral for a loan to EAC from First

State Bank ("First State"). Although First State did not agree to allow AIMS to assume the EAC note, AIMS made regular payments on the loan through EAC's bank account at First State including a payment on June 25, 1983.

AIMS filed a Chapter 11 petition on July 15, 1983. First State was scheduled by the debtor as a secured claimholder. Ten months later, in April of 1984, First State first made demand to AIMS that it surrender the collateral securing the debt. AIMS resisted this demand claiming that First State's security interest lapsed by First State's failure to refile its financing statement in the name of AIMS. First State finally filed a motion for relief from the automatic stay on July 12, 1984. In its relief stay motion, First State also claimed an administrative expense under 11 U.S.C. § 503(b)(1)(A) for the postpetition use of the equipment by the debtor.

Consistent with 11 U.S.C. §§ 362(d) and (e), a preliminary hearing on First State's relief stay motion was scheduled for August 9, 1984 but was reset to September 11, 1984 at the request of First State. At the September 11 preliminary hearing, the request was set for a final hearing on October 9, 1984. After the October 9 final hearing, this court entered an order on October 19, 1984 granting First State relief from the stay to enforce its security interest. The request for an administrative expense was reserved. First State recovered possession of the equipment on November 12, 1984.

On May 7, 1985 a hearing was held to consider the administrative expense request. First State argues that the debtor's retention and use of the collateral from July 15, 1983 (the filing date) to November 12, 1984 (the date First State retook possession) entitles the bank to an administrative expense measured as the depreciation of the collateral in the sum of $15,069.31. AIMS responds that there is no authority for awarding an administrative expense to a creditor who has merely been delayed by bankruptcy in recovering property under its security interest.

## II.

First State bases its argument on 11 U.S.C. § 503(b)(1)(A) which authorizes administrative expense status for:

> the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

Initially, AIMS contends that First State has not shown that use of the equipment was "actual" or "necessary" for preserving the estate. It claims that some of the equipment was not used at all or that AIMS had other equipment which could have been used to carry out similar functions. (*See* AIMS brief at 4, May 7 affidavit of AIMS president Cargile). We need not fully consider this contention since we believe that even if AIMS' use of the equipment was necessary to its postpetition operations, First State is not entitled to an administrative expense for depreciation of the property.

The administrative expense priority of § 503(b)(1)(A) provides an inducement to postpetition creditors, employees, and other third parties to provide the goods and services necessary to attempt a successful reorganization. The United States Court of Appeals for the Seventh Circuit explained § 503 this way:

> The policies underlying the provisions of § 503 (and its predecessor, § 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1) (1976)) are not hard to discern. If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the bankrupt to function. *See In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) (Coffin, Chief Judge). Thus, "[w]hen third parties are *induced* to supply goods or services to the debtor-in-possession ... the purposes of [§ 503] plainly require that their claims be afforded priority." *Id.* (emphasis added) (footnote omitted). Without a provision like § 503,

efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.

This involves no injustice to the pre-petition creditors because it is for their benefit that reorganization is attempted. If reorganization successfully rehabilitates the debtor, presumably the pre-petition creditors will be better off than in a liquidation. *See Reading Co. v. Brown, supra,* 391 U.S. [471] at 478, 88 S.Ct. [1759] at 1783 [20 L.Ed.2d 751]. However, because priority should not be afforded unless it is founded on a clear statutory purpose, if the appellants' claim does not comport with the language and underlying purposes of § 503, their claim must fail. *See In re Chicago, Milwaukee, St. Paul & Pacific Railroad,* 658 F.2d 1149, 1163 (7th Cir.1981) (general rule is equality of distribution; deviation must appear in the statute), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress. *Id.; In re Mammoth Mart, supra,* 536 F.2d at 953.

*In re Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984). Postpetition expenses for utility service, rent of property, insurance, wages of employees, and advertising are examples of items which have been included in the § 503(b)(1)(A) priority. *See* 3 King, COLLIER ON BANKRUPTCY, ¶ 503.04 (15th ed. 1985).

We do not believe § 503(b) is intended to provide an administrative expense award to a prepetition secured lender based on the debtor's postpetition possession and use of collateral. As the quoted portion of *Jartran* demonstrates, the administrative priority should not be awarded absent a clear statutory purpose. *In re Jartran, supra,* 732 F.2d at 586. The policy of encouraging business dealings with the postpetition debtor during the reorganization period is not served by according administrative priority to a prepetition secured party. The secured claimholder is not electing postpetition to do business with the debtor—the possibility of having to deal with a debtor in bankruptcy was one of the many considerations a lender must evaluate at the time of the original loan and security agreement. First State is not a *post*petition lender who might be entitled to special protections under 11 U.S.C. § 364. As an ordinary prepetition secured party, First State is only entitled to the usual remedies of a secured lender in a bankruptcy case—no more, no less.

A secured creditor is protected against depreciation of collateral during the reorganization period through various other provisions of the Bankruptcy Code. Under 11 U.S.C. §§ 361 and 362 adequate protection of the creditor's interest may be required through periodic cash payments, replacement liens, or other relief *except* the granting of a § 503(b)(1) administrative expense. Where the adequate protection given by the trustee or debtor-in-possession proves to be inadequate, 11 U.S.C. § 507(b) provides a superpriority to the injured creditor. *See In re Callister,* 15 B.R. 521, 5 BANKR.CT.DEC. (CRR) 446, 5 COLLIER BANKR.CAS.2d (MB) 1058 (Bankr.D.Utah 1981). If adequate protection is not feasible, the creditor may receive relief from the stay to repossess its collateral. 11 U.S.C. § 362(d). Pursuant to 11 U.S.C. § 363(e) the court may prohibit or condition the use of property in which the creditor has an interest as is necessary to provide adequate protection of such interest.

First State chose not to file a motion for relief from the stay until a year after AIMS filed its bankruptcy petition. First State never sought adequate protection. Had the bank asserted its rights, the debtor would have had the option to surrender the collateral to First State and avoid providing adequate protection or the debtor would have had to comply with §§ 361, 362, etc., and protect the bank's interest in the collateral. The Bankruptcy Code nowhere puts the responsibility on the debtor to

initiate consideration of adequate protection of a creditor's noncash collateral. There is nothing in § 503 remotely suggesting that administrative expense priority was intended as an optional remedy to adequate protection of a secured claimholder's interest in property of the estate.

The precise issue raised here was considered in *In re Briggs Transportation Co.*, 47 B.R. 6 (Bankr.D.Minn.1984). In *Briggs*, Judge Kressel held that § 503(b)(1)(A) could not be used by a secured creditor to recover the depreciation of collateral between filing and repossession. In addition to noting the statutory protections for the secured creditor reviewed above, the *Briggs* court made these observations with which we concur:

> A contrary rule could create considerable problems. A creditor, or several creditors could either intentionally or unintentionally do nothing regarding seeking relief from the automatic stay or requesting adequate protection for a long period of time including up until a plan was proposed. Then long into the case, the creditors could step forward, make requests for payment of administrative expense which would at that point be a sum which the debtor would be unable to pay. Since § 1129(a)(9)(A) requires that all of the priority administrative expenses be paid in full on the effective date of confirmation, such creditors could effectively veto any plan.

> The creditor delayed in making any requests and I think Congress intended the cost of such delay to be borne by the creditor, not the debtor.

A result contrary to *Briggs* was reached in *In re Prime, Inc.*, 37 B.R. 897 (Bankr.W. D.Mo.1984). In *Prime* the secured creditor seeking an administrative expense had failed to request adequate protection during a twenty-month period after the bankruptcy filing. The court held that no adequate protection could be awarded in the absence of the creditor's request but it nonetheless granted an administrative expense measured by depreciation of the collateral and "based upon what the creditor contributed to the ongoing business of the debtor." *Prime*, 37 B.R. at 899.

We decline to follow the *Prime* decision for several reasons. It fails to give proper consideration to the existing Code remedies described above and in *Briggs*. We do not agree with the proposition that a secured creditor "contributes" to the administration of an estate as contemplated by § 503(b) where the debtor-in-possession merely continues using property which the prepetition debtor owned. In a typical Chapter 11 case, the debtor-in-possession must use many encumbered assets to operate its business. Although the secured creditor may be entitled to adequate protection of its lien interest, absent other demonstrated cause it cannot divest the debtor of its right to use collateral necessary to reorganization unless it can show that postpetition retention and use of the collateral will impair the creditor's adequate protection. 11 U.S.C. §§ 362(d), 363(e). The secured creditor is not contributing anything to the estate by sitting back and "allowing" a debtor-in-possession to use collateral which it already owns and has a statutory right to use.

The cases cited by First State in which lessors have been allowed compensation for the period of time after the bankruptcy filing and before the lessor regained possession of the leased property are not persuasive.[1] There is a fundamental difference between security agreements and lease agreements. In lease situations the lessor is the owner of the property and the lessee must compensate the lessor for the benefit to the estate of using the lessor's property. By contrast, the secured lender is not the owner of the collateral but instead merely has a lien for which it is entitled to adequate protection.

First State has been delayed in recovering collateral. However, there is no sug-

---

1. *See In re Ram Manufacturing*, 38 B.R. 252 (Bankr.E.D.Pa.1984); *In re Janesville Lodging Limited*, 35 B.R. 672 (Bankr.W.D.Wisc.1983); *Don Allen Chevrolet, Inc. v. Foreman (In re First Research Corp.)*, 457 F.2d 331 (5th Cir.1972).

gestion that AIMS fraudulently withheld the equipment or was guilty of bad faith in contesting First State's request for relief from the stay. First State did not take advantage of existing Code remedies and we hold that it may not now advantage itself through this back door request for an administrative expense.

An appropriate order will be entered.