In re COAL-X LTD. "76", Debtor.

C & C COMPANY, a West Virginia corporation, successor in interest to Walter Kellogg, Trustee, Plaintiff.

v.

SEATTLE FIRST NATIONAL BANK, Defendant.

Bankruptcy No. 84C-02237.
Civ. No. 84PC-1651.

United States Bankruptcy Court, D. Utah.

April 7, 1986.

Michael N. Zundel, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, Utah, for C & C Co.

Peter W. Billings, Jr. and Gary E. Jubber, Fabian & Clendenin, Salt Lake City, Utah, for Seattle First Nat. Bank.

MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

## FACTS AND PROCEDURAL BACKGROUND

Coal-X Ltd. "76", the debtor, filed a petition for voluntary relief under Chapter 11

of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado on May 18, 1984. The debtor is a limited partnership whose general partner, Coal-X, Inc., a Utah corporation, is a wholly-owned subsidiary of Gulf Energy Corporation ("Gulf"), which is also a Utah corporation. An involuntary bankruptcy petition was filed against Gulf on April 30, 1984, and Gulf consented to entry of an order for relief. Coal-X, Inc. filed a voluntary Chapter 11 petition on May 21, 1984. The debtor is one of approximately 15 limited partnerships formed by Gulf and its subsidiaries. Its principal assets consist of coal mineral interests and extraction equipment located in West Virginia. On September 4, 1984, the United States Bankruptcy Court for the District of Colorado entered an order transferring this case and those of Gulf Energy Corporation, Coal-X, Inc. and related entities to this Court.

Christian Land Corporation and C & C Company are West Virginia corporations. On May 1, 1975, Christian Land Corporation entered into an agreement to lease certain coal mining property located in West Virginia to C & C Company. On March 22, 1976, C & C Company entered into an agreement to sublease the property to Coal-X, Inc. Under the terms of the sublease, Coal-X, Inc. agreed to pay at least $60,000.00 per year to Christian Land Corporation and $25,000.00 per year to C & C Company. On October 4, 1976, Coal-X, Inc. assigned the sublease to the debtor. Seattle First National Bank ("Seafirst") is the debtor's largest secured creditor. It advanced the sum of $760,000.00 to the debtor on November 26, 1981. As security for the loan the debtor pledged all of its assets to Seafirst on December 19, 1981.

Prior to filing its bankruptcy petition on May 18, 1984, the debtor was current on minimum annual royalty payments to Christian Land Corporation and C & C Company through April 30, 1984. But the debtor failed to pay the annual royalties which became due on May 1, 1984.

On September 27, 1984, this Court entered an order converting the debtor's Chapter 11 case to a case under Chapter 7 and appointing Walter Kellogg trustee. On October 2, 1984, the trustee filed an application for authority to sell coal mining equipment located on the leased premises free and clear of liens with valid liens to attach to the sale proceeds. Following a hearing on October 19, the Court entered an order authorizing the sale. The equipment has been sold and the proceeds are available for disbursement.

On October 5, 1984, Christian Land Corporation and C & C Company filed a Notice of Lien pursuant to 11 U.S.C. § 546(b) against the debtor's estate, claiming a landlord's lien on the personal property of the debtor for rent, storage, and damages pursuant to the laws of the state of West Virginia and the lease agreement. On October 18, 1984, the trustee commenced an adversary proceeding to avoid the lien of Christian Land Company and C & C Company. The defendants consented to entry of judgment avoiding their liens and preserving them for the benefit of the estate pursuant to Sections 545 and 551 of the Bankruptcy Code. On December 6, 1984, the trustee commenced this adversary proceeding to determine the validity, priority, and extent of the landlord's lien *vis-a-vis* the lien of Seafirst.

On February 5, 1985, the trustee filed a motion, pursuant to Bankruptcy Rule 9019, to approve a compromise and settlement with Seafirst whereby Seafirst would stipulate to entry of judgment against it in the amount of $22,000.00. Christian Land Corporation and C & C Company objected to the proposed settlement, contending that it was not in the best interest of the estate to compromise an $85,000.00 claim, which represents the only substantial unencumbered asset of the estate, for $22,000.00. At the hearing on the motion to approve the compromise, the Court authorized C & C Company to purchase the trustee's cause of action for $22,000.00 and to prosecute it in its own name as successor in interest to the

trustee.[1] At the time it purchased the trustee's cause of action, C & C Company was not asked or required to release any further claims it might have against the debtor's estate and it did not agree to do so. The language of the order providing for assignment of the cause of action did not expressly or by implication preclude C & C Company from asserting an administrative claim.[2]

Following the substitution of parties, in June, 1985, C & C Company and Seafirst filed cross-motions for summary judgment. The matter was heard on August 27, 1985. The Court ruled from the bench that (1) the statutory landlord's lien for rent has priority over the lien of Seafirst, and (2) the landlord's lien for rent is subject to apportionment, and secured payment for rent between May 1, 1984, the date the annual rental payment was due, and October 31, 1984, the date the trustee rejected the lease. Counsel for C & C Company was directed to prepare and submit a form of judgment.

On January 15, 1985, Christian Land Corporation filed a priority proof of claim in the amount of $30,694.00, and C & C Company filed a priority proof of claim in the amount of $30,221.44. The claims represented amounts claimed as an administrative expense for the use and occupancy value of the property, as well as for post-petition damages to the property. The trustee considered the amounts claimed to be excessive and filed objections. The parties agreed to a compromise and settlement of their dispute. Seafirst objected to allowance of these claims in light of the Court's ruling in the summary judgment proceeding.

Seafirst objects to the form of the proposed judgment on the ground that it provides for a money judgment, together with postjudgment interest, against Seafirst. The creditor points out that the complaint sought only a determination of the validity, priority, and value of the statutory landlord's lien, and did not pray for a money judgment with interest. Seafirst further argues that the trustee's interest in the proceeds from the sale of the debtor's mining equipment, as measured by the preserved lien, should be reduced to the extent the estate pays C & C Company for its administrative expense claim. C & C Company replies that as successor in interest to the trustee it is entitled to keep the benefit of the avoided lien regardless of what happens to the claims they once secured. C & C Company also filed a motion to amend the summary judgment to provide for prejudgment interest.

The objection and motions were heard by the Court on October 18, 1985 and taken under advisement.

## ISSUES

There are three issues before the Court. The first is whether C & C Company is entitled to a money judgment against Seaf-

1. Seafirst has not challenged the validity of the assignment. In *Robison v. First Financial Capital Mgmt. Corp. (In re Sweetwater)*, 55 B.R. 724 (D.Utah 1985), the Court held that causes of action under the trustee's avoiding powers are not assignable. In this proceeding, the avoidance powers were exercised by the trustee and the lien of Christian Land Corporation and C & C Company was avoided and preserved for the estate. What was assigned to C & C Company was not a cause of action under the avoiding powers but the preserved lien itself, the validity, priority, and extent of which would have to be determined by litigation.

2. An order submitted by C & C Company was approved as to form by counsel for the trustee and Seafirst. In pertinent part the order provides as follows:

[IT IS HEREBY]

ORDERED, that the Trustee sell his claim secured by the West Virginia statutory landlord's lien which is the cause of action encompassed by this adversary proceeding to C & C Company for $22,000.00 without recourse or warranty, with any and all sums recovered by C & C Company to be the sole and separate property of C & C Company as the purchaser of the Trustee's claim, free and clear of any claim of the Trustee or his successors or assigns, and it is further

ORDERED, that upon the purchase of the Trustee's cause of action, C & C Company may continue to prosecute this action in this Court in its own name as successor in interest to the Trustee [....]

irst on its complaint to determine the validity, priority, and value of its landlord's lien. The second is whether C & C Company's lien should be reduced by the amount of any administrative expense claim paid to C & C Company by the trustee of the debtor's estate. The third issue is whether C & C Company is entitled to add prejudgment interest to the amount of its lien.

## DISCUSSION

### I.

### *The Language and Legislative History of Section 551*

The Court's analysis of the relationship between C & C Company's recovery in its lien priority litigation and its claim for administrative rent must begin with Section 551 of the Bankruptcy Code, which provides:

> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

This provision represented a change from prior law. S.Rep. No. 95–989, 95th Cong., 2d Sess. 91 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News, p. 5877. Under the Bankruptcy Act, the authority of the bankruptcy court to order that an avoidable lien be preserved for the benefit of the estate was found in scattered provisions enacted during the long history of the 1898 law. *Waldschmidt v. Edgcomb Metals (In re Ward)*, 42 B.R. 946, 951 n. 8, Bankr.L.Rep. (CCH) ¶ 70,072, 11 C.B.C.2d 569 (Bkrtcy.M.D.Tenn.1984). *See* Advisory Committee Note to former Bankruptcy Rule 611.

In 1973, the Supreme Court promulgated Bankruptcy Rules pursuant to 28 U.S.C. § 2075. The predecessor of Section 551 was Rule 611, which provided:

> Whenever any transfer is voidable by the trustee, the court may determine, in an adversary proceeding in which are joined persons claiming interests or rights in the property subject to the transfer, whether the transfer shall be avoided only or shall be preserved for the benefit of the estate.

The Advisory Committee Note observed that "[t]he power to preserve a voidable lien for the benefit of the estate probably inheres in the court of bankruptcy as a court of equity." Unlike Section 551, however, preservation of a lien was not automatic but discretionary with the court. *See* 4 COLLIER ON BANKRUPTCY ¶ 67.16, at 185–86 (14th ed. 1978).

The bankruptcy legislation proposed by the Commission on the Bankruptcy Laws of the United States in 1973 retained the discretionary character of lien preservation provided by Rule 611:

> Section 4–610. *Preservation of Voidable Transfer.* Whenever any transfer is voidable by the trustee, the court may determine on complaint filed by the trustee after hearing on notice to persons claiming an interest in the property subject to the transfer, whether the transfer shall be avoided or shall be preserved for the benefit of the estate.

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. II, at 181 (1973). In the first session of the 94th Congress in January, 1975, the bill proposed by the Commission was introduced as H.R. 31. A bill proposed by the National Conference of Bankruptcy Judges was also introduced in January, 1975 as H.R. 32. *See* 1 COLLIER ON BANKRUPTCY ¶ 1.03[2][6], at 1–15 to 1–16 (15th ed. 1985). The provisions in the two bills relating to preservation of avoided liens were nearly identical. *See Hearings Before the Subcomm. on Civil and Constitutional Rights of the House Judiciary Comm. on H.R. 31 and H.R. 32*, 94th Cong., 1st & 2d Sess., App. at 187 (1976). The National Bankruptcy Conference endorsed the codification of the lien preservation power, suggesting merely that language relating to procedure be deleted as being more appropriately dealt with in the bankruptcy rules, and the statute clearly indicate that

it was not intended to overrule *First National Bank of Baltimore v. Staake*, 202 U.S. 141, 26 S.Ct. 580, 50 L.Ed. 967 (1906). *See Hearings Before the Subcomm. on Civil and Constitutional Rights of the House Judiciary Comm. on H.R. 31 and H.R. 32*, 94th Cong., 2d Sess., Pt. 3, at 1844, 1850 (1976).

Following extensive hearings in 1975 and 1976, bankruptcy bills were reintroduced in the 95th Congress. The progenitors of the Bankruptcy Reform Act of 1978, namely, H.R. 8200 and S. 2266, differed only slightly from each other in their treatment of avoided liens:

### H.R. 8200

**§ 551. Automatic preservation of avoided transfer**

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate.

### S. 2266

**§ 551. Automatic preservation of avoided transfer**

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, is preserved for the benefit of the estate.

The managers of the bankruptcy legislation, Representative Edwards and Senator DeConcini, in their joint explanatory statement, noted:

Section 551 is adopted from the House bill and the alternative in the Senate amendment is rejected. The section is clarified to indicate that a transfer avoided or a lien that is void is preserved for the benefit of the estate, but only with respect to property of the estate. This prevents the trustee from asserting an avoided tax lien against after acquired property of the debtor.

124 Cong.Rec. S 17,414 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H 11,097 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

The earlier reports of the House Judiciary Committee and the Senate Judiciary Committee, regarding Section 551, were nearly the same:

This section is a change from present law. It specifies that any avoided transfer is automatically preserved for the benefit of the estate. Under current law, the court must determine whether or not the transfer should be preserved. The operation of the section is automatic, unlike current law, even though preservation may not benefit the estate in every instance. A preserved lien may be abandoned by the trustee under proposed 11 U.S.C. 554 if the preservation does not benefit the estate. The section also preserves for the benefit of the estate any lien that is void under section 506(d). The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 376 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 6332. *Cf.* S.Rep. No. 95–989, 95th Cong., 2d Sess. 91 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 5877.

In the reported decisions since enactment of the Bankruptcy Code, Section 551 is normally utilized when the trustee avoids a creditor's lien on property. *See In re Ward, supra*, 42 B.R. at 951. The trustee then steps into the shoes of such creditor; in effect, the trustee is subrogated to the rights of the lien creditor with the avoided lien. *Robinson v. The Howard Bank (In re Kors, Inc.)*, 50 B.R. 874, 883, 41 U.C.C. R.S. 1408 (Bkrtcy.D.Vt.1985); *Staats v. Barry (In re Barry)*, 31 B.R. 683, 686, Bankr.L.Rep. (CCH) ¶ 69,232 (Bkrtcy.S.D. Ohio 1983). In *Tennessee Machinery Co., Inc. v. Appalachian Energy Industries, Inc. (In re Appalachian Energy Industries, Inc.)*, 25 B.R. 515, 516–17, 9 B.C.D. 1162 (Bkrtcy.M.D.Tenn.1982), the court explained the purpose and function of Section 551, as follows:

Section 551 is intended to prevent the windfall to junior lienors that would otherwise result when a trustee in bankrupt-

cy successfully avoids a senior lien on property. Without the authority to preserve under § 551, the avoidance of a lien would shift rank and priorities and each junior lienor would realize an enhancement of its position. Correspondingly, without lien preservation, the estate for whose benefit the trustee originally avoided the lien would be enriched, only if after avoiding the lien and paying all junior lienors, equity remained in the property for the estate. Junior lienors would be benefited by the actions of the trustee in situations where few equities would favor such a result.

(Citation omitted).

## II.

*The Relationship Between C & C Company's Preserved Lien and its Administrative Expense Claim*

In this proceeding, C & C Company contends that its administrative claim for postpetition rent differs in kind from its landlord's lien for rent, which was first avoided, then preserved, and finally assigned. Seafirst contends that unless the claim secured by the landlord's lien is reduced by the amount paid by the trustee as administrative rent, C & C Company will receive a windfall.

 In order to resolve this controversy, it is necessary to understand and delineate the twin claims asserted by C & C Company. It is helpful in this regard to consider first its claim for "administrative rent" under Section 503(b)(1)(A). Section 503 defines what expenses will be considered administrative expenses and thus entitled to a first priority under Section 507(a)(1). *In re Briggs Transportation Co.*, 47 B.R. 6, 7 (Bkrtcy.D.Minn.1984). Administrative expenses consist of expenses incurred after entry of the order for relief that are necessary to administer the

estate and, if the debtor is continuing to operate its business and is not immediately liquidating, to conduct the business of the debtor after the order for relief. *Matter of Chicago, Rock Island and Pacific Railroad Co.*, 756 F.2d 517, 519, Bankr.L.Rep. (CCH) ¶ 70,297 (7th Cir.1985), *quoting* 3 COLLIER ON BANKRUPTCY ¶ 507.-04[1][a], at 507–24 (15th ed. 1984).[3] The principal purpose of according administrative priority to claims for benefit to the estate is to prevent unjust enrichment of the debtor's estate, rather than simply to compensate the claimant. *Matter of Strause*, 40 B.R. 110, 113 (Bkrtcy.W.D.Wis. 1984). Conceptually, the costs of administration are a kind of priority afforded to those who either help preserve and administer the estate or who assist with the rehabilitation of the debtor so that all creditors will benefit. *In re Armorflite Precision, Inc.*, 43 B.R. 14, 16, Bankr.L.Rep. (CCH) ¶ 70,041 (Bkrtcy.D.Me.1984), *aff'd* 48 B.R. 994 (D.Me.1985).

There can be no doubt that C & C Company is entitled to an administrative claim for postpetition rent of the leased premises. Neither the trustee nor Seafirst disputes that C & C Company's claim relates to "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

While Section 507(a) adjusts the priorities among administrative claimants and unsecured creditors, Sections 545 and 551 permit the trustee to first avoid and then preserve a lien for rent which must be satisfied in full before any payments can be made to administrative claimants or unsecured creditors. The West Virginia statute subjects a tenant's personal property brought onto the leased premises to a landlord's lien, which has priority over later liens of the tenant's creditors. W.Va. Code § 36–6–13 (Repl.Vol.1985). *See generally,* DiVita, "Conflicts Between the West Vir-

---

**3.** For a claim to be accorded an administrative expense priority, then, generally it must be predicated on a debt incurred (1) for the actual and necessary costs of preserving the estate, and (2) after the commencement of the case. *In re John Clay and Co., Inc.*, 43 B.R. 797, 807 (Bkrtcy.D.Utah 1984). *Cf. In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 12 B.C.D. 978 (Bkrtcy. D.Utah 1985) (services of creditors' attorney in negotiating unsuccessful nonbankruptcy workout prepetition not entitled to administrative priority).

ginia Landlord's Lien and Article Nine of the Uniform Commercial Code," 36 W.Va. L.Rev. 417, 419–20 (1984). The statutory landlord's lien constitutes a charge against the personal property or the proceeds therefrom to secure payment of six months rent. By preserving the avoided lien, C & C Company, standing in the shoes of the trustee (who, prior to the assignment, stood in the shoes of C & C Company), may look to the machinery and equipment on the premises, or proceeds from the sale thereof, to secure payment of six months rent. C & C Company is a secured creditor with "a property right which entitles [it] to be paid out of the assets against which the security attaches." *See In re Orchid Island Hotels, Inc.*, 18 B.R. 926, 934 (Bkrtcy. D.Haw.1982), *quoting* H.R.Rep. No. 687, 89th Cong., 1st Sess. (1966).

■ The landlord's lien avoided by the trustee constitutes property of the estate. Under Section 541 of the Bankruptcy Code, property of the estate includes property made available to the estate by the exercise of the trustee's avoiding powers. *See* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 367–68 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 6323; S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News, p. 5868; *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313 & n. 10, 76 L.Ed.2d 515 (1983), *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 860 & n. 7 (10th Cir.1986). The avoided and preserved lien was sold to C & C Company for $22,000.00. By successfully litigating the issues of the priority and extent of that lien against Seafirst, C & C Company became entitled to the sum of $42,500.00, representing the extent of the landlord's lien against personal property located on the leased premises under the apportionment of rent rule recognized by the Court.

At first glance, Seafirst's argument that C & C Company should not be entitled both to enforcement of a lien for postpetition rent in the amount of $42,500.00 and an administrative expense claim for the same rent has a certain logical appeal. Nonetheless, it must be rejected.

One need only ask a series of questions to demonstrate the fallacy of Seafirst's position. First, if the property sold was personal property, such as an automobile, rather than a cause of action, and the landlord was the buyer, would the sale of this asset have any affect on the landlord's claim for administrative rent? The answer is clearly "no." The fact of an asset purchase by a creditor in a bankruptcy case ordinarily has no bearing on that creditor's right to seek allowance of an administrative claim. Second, if the property to which the landlord's lien attached was worthless (as, for example, where the equipment was destroyed by fire or an explosion in the mine), would the landlord thereby lose its administrative claim for rent? The equally obvious answer to this question is also "no." Finally, if the trustee had sold or assigned this cause of action to an unrelated third party and that third party successfully prosecuted the lien priority dispute against the bank, would the administrative claim of the landlord be affected? Again the question must be answered in the negative.

■ The results which would follow in each of these examples would be absurd if Seafirst's position were sustained. The surrounding facts and circumstances of the present case do not warrant a different rule of law. What C & C Company really gains in this proceeding is the benefit of its superior diligence. Seafirst has no cause to complain; it has lost only what it would have lost had the trustee and not C & C Company aggressively pursued the lien priorities action. Avoidance of the lien under Section 545 and its preservation under Section 551 operated to sever the lien from the administrative rent claim it once secured. Accordingly, this Court holds that the amount C & C Company receives from the trustee in settlement of its administrative expense claim should not be deducted from its claim for rent secured by a landlord's lien on the proceeds from the sale of equipment located on the leased premises.

It is unnecessary and inappropriate to grant C & C Company a money judgment against Seafirst. The Court has determined that C & C Company has a lien on the personal property located on the leased premises and the proceeds therefrom, which secures payment of six months rent, and that lien is prior in right to the lien of Seafirst.

### III.

#### Prejudgment Interest

■ C & C Company urges the Court to add an award of prejudgment interest to its secured claim. In support of this request, C & C Company invites the Court's attention to W.Va.Code § 37–6–9 (Repl.Vol. 1985), which provides that "in any action for rent, or for such use and occupation, interest shall be allowed as on other contracts." West Virginia Code § 56–6–27 (1966) permits the Court to fix the amount of prejudgment interest on an action founded on a contract. *Willey v. Travelers Indemnity Co.*, 156 W.Va. 398, 193 S.E.2d 555, 561 (1972). West Virginia Code § 56–6–31 was passed by the legislature on April 6, 1981, and became effective 90 days thereafter, on July 5, 1981. The amended statute increased the maximum annual rate on postjudgment and prejudgment interest from six percent to ten percent. *See Bell v. Inland Mutual Insurance Co.*, 332 S.E.2d 127, 137–38 (*cert. denied* — U.S. ——, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985). West Virginia law allows for the recovery of damages to real property where such damages are reasonably susceptible to calculation. *Kirk v. Pineville Mobile Homes, Inc.*, 310 S.E.2d 210 (1983). Since this action was "founded on contract," W.Va.Code § 56–6–27 applies to the matter of prejudgment interest, and not § 56–6–31, which by its own terms applies only where the rule concerning interest is not otherwise provided by law. In actions founded on contract,

§ 56–6–27 specifies that an award of prejudgment interest is discretionary and is the prerogative of a jury.[4] *See Thompson v. Stuckey*, 300 S.E.2d 295, 300 (1983).

On the facts and circumstances of this case, the Court declines to award prejudgment interest. This creditor has acquired for itself a prerogative normally available only to trustees and debtors-in-possession. Furthermore, no statutory or case authority has been offered by C & C Company which would suggest that interest should be allowed as a part of C & C Company's *secured* claim. *Cf.* 11 U.S.C. § 506(b).

### CONCLUSION

This Court shall not grant C & C Company a money judgment against Seafirst, but shall enter an order, consistent with its August 27 bench ruling and this memorandum opinion, establishing the priority of C & C Company's lien on personal property, which secures payment of $42,500.00 rent, ahead of the lien of Seafirst. Prejudgment interest will not be added. Nothing in the language of the Court's order directing the trustee to assign the avoided lien to C & C Company required that the landlord look solely to the litigation to satisfy its claim for rent. Avoidance of the lien and its preservation severed the lien from the claim it once secured. Therefore, C & C Company is not required to reduce the extent of its lien by the amount recovered upon account of its administrative claim.

Counsel for C & C Company shall prepare and submit an appropriate form of order in accordance with Local Rule 13.

---

**4.** W.Va.Code § 56–6–11 authorizes the court, in an action at law, if neither party requires a jury, to ascertain the amount the plaintiff is entitled to recover in the action and render judgment accordingly. In such cases, the court occupies precisely the same relation to the case that a jury would have occupied if the case had been tried to a jury. *Baltimore & O.R. Co. v. Faulkner*, 4 W.Va. 180 (1870).