**In re PRIME, INC., Debtor.**

**Bankruptcy No. 81–03200–S–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Jan. 3, 1984.

Robert R. Raymond, Russell S. Jones, Jr., Kansas City, Mo., for Fruehauf Corp.

Gary A. Love, Springfield, Mo., for Debtor.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Fruehauf Corporation, hereinafter Fruehauf, sold Debtor fifty (50) refrigerated trailers and twenty (20) dry vans. Debtor defaulted on the required payments in July of 1981 and filed for reorganization under the Bankruptcy Code in October of 1981. In December of 1981 Fruehauf sought relief from the automatic stay to repossess its trailers or for adequate protection. Debtor answered by general denial and asserted that the trailers were necessary for its reorganization.

Prior to trial the parties settled the dispute. Debtor agreed to return all the collateral. The Court approved the settlement. In part the settlement provided that:

"3. ... the seventy (70) Fruehauf trailers described herein are not necessary for the continued operation or reorganization of Prime ...

"4. As soon as practicable, but in no event later than 60 days after the signing of this agreement, Prime will deliver to the Fruehauf Corporation facility in Springfield, Missouri, all of the seventy (70) trailers referred to herein. Such delivery may take place piecemeal, as the trailers return to Springfield in the normal course of Prime's business. Said trailers will be returned to Fruehauf in roadworthy condition acceptable to Fruehauf, and any damaged or wrecked trailers will have been previously repaired by Prime, at Prime's expense. 'Roadworthy condition' as used herein shall mean in such condition as would reflect normal wear and tear for trailers of comparable age and mileage ...

"5 ...

"6. As soon as practicable after all of the trailers have been delivered to Fruehauf, Fruehauf will sell said trailers at public auction.... Prime has been advised by a side letter which has already been sent to Prime of the minimum bids to be made at the public auction by Fruehauf ...

"7. ... If, following the public auction, Fruehauf believes there is any deficiency owed by Prime ... Fruehauf will file ... an amended Proof of Claim ... as a general unsecured debt without priority".

The side letter was written February 3, 1982, by counsel for Fruehauf and committed it to bid $19,000 for each refrigerated van and $8,500 for each dry van assuming the trailers were in roadworthy condition as required in the settlement agreement. The figures were based upon an inspection done in November of 1981 of 19 refrigerated trailers and 6 dry vans. When the trailers began coming in Fruehauf declared that they were not in roadworthy condition and that it would not be bound by the minimum bids. The sale was held and the proceeds fell short of the projection which had been based upon the minimums. After deducting the costs of sale, Fruehauf had a deficiency of some $182,638.98 which it seeks to have declared an administrative expense or entitled to a super-priority. Debtor and the unsecured creditor's committee object to such treatment.

A hearing was held on the application. The parties appeared by counsel and representatives. Evidence was heard and the matter taken under advisement. Briefs have been filed.

In its application Fruehauf contends that debtor's use of the trailers from the time of inspection to the time of surrender constituted a loan of the trailers without payment. Fruehauf contends the trailers generated revenue for debtor and it should receive compensation for the benefit. In addition Fruehauf argues it was not adequately protected. Debtor and the unsecured creditors committee contend that Fruehauf should be bound by its settlement agreement and that the trailers were returned in a roadworthy condition.

Section 507(b) of the Code, Title 11, U.S.C., provides that:

"(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection".

The debtor and the unsecured creditors committee contend that there was no provision of adequate protection as is contemplated by the statute and, therefore, Fruehauf is entitled to no relief under Section 507(b). Such an argument ignores the intention of the series of provisions dealing with use of collateral and adequate protection.

Section 363(c)(1) of the Code permits the trustee to "use property of the estate in the ordinary course of business". The legislative history notes that such use is limited by the concept of adequate protection. House Report No. 95–595, 95th Cong., 1st Sess. (1978) 344 reprinted in 2 App Collier on Bankruptcy (15th Ed.), U.S.Code Cong. & Admin.News 1978, p. 5787. Section 363(d) of the Code articulates this limitation and relates it to conditions of adequate protection established by the Court in stay proceedings. Section 362(d) of the Code.

■■■ Where collateral is sold or depreciates, the notion of adequate protection requires replacement or payment so that the value of the creditor's interest is not dissipated. *In re Monroe Park,* 17 B.R. 934 (DC Del 1982); *In re Murel Holding Co.,* 75 F.2d 941 (2nd Cir.1935); *In re Bermec Corp.,* 445 F.2d 367 (2nd Cir.1971). A nonexclusive description of adequate protection is contained in Section 361 of the Code. The concept is bottomed on the notion that, even though the debtor uses the property in which the creditor has an interest, the creditor always has what is bargained for.

In that conceptual framework it becomes absolutely clear that, regardless of the title, an order directing the return of collateral is the most classic example of adequate protection. The creditor gets exactly what it bargained for. But if all the collateral is not returned or if it is not returned reasonable wear and tear set aside, then the creditor is entitled to a priority claim as provided in Section 507(b).

Of course, as Judge Mabey points out in *In re Callister,* 15 B.R. 521 (Bkrtcy.Utah 1981), the relationship between Sections 507(a), 507(b) and 503 are not well articulated in the statutory language. 15 B.R. at 529 fn. 22 and 23. It is clear enough, however, that a creditor who gets less than all its collateral returned is entitled to the protection contemplated in the statutory scheme which begins with Section 507(b).

■■■ Fruehauf is entitled, therefore, to a priority allowance for the three lost trailers. The report of sale shows four missing; the evidence at the hearing indicated that Fruehauf admits, that subsequent to the sale, one of the missing trailers was found and delivered. The trailers were used by the debtor in preserving the estate. Costs associated with the use would be an expense under Section 503(b)(1)(A) of the Code and under Section 507(b). The evidence does not indicate whether a refrigerated or dry trailer was found. Creditor is directed to file the request for allowance, describing the three missing trailers and valuing them at the average sale price. This amount is entitled to a superpriority.

■■■ The balance of the sale shortfall, argues Fruehauf, comes from use of the trailers by the debtor from the time of filing to the time of repossession. The chief complaint seems to be the condition of the tires. There was also a complaint that not all necessary repairs had been performed by Prime. Debtor denies these contentions.

The values to which Fruehauf committed in the side letter of February 3, 1982 were arrived at after an inspection of about 30%

of the vehicles in November of 1981 and review by corporate personnel in January of 1982. As the evidence shows the reviewing personnel reduced the November appraisal. The agreement was executed in late February, approved by the Court in March and called for delivery of all the trailers within sixty (60) days thereafter. The evidence shows that most of the trailers were surrendered in the last days of the sixty (60) day period or shortly thereafter.

When the settlement agreement was executed, the inspection was about 3½ months old. The side letter was written three months after the inspection and a full month after the January action by the corporate personnel. In neither document is there any reference to compensation, by rent or otherwise, for loss of value due to use after November 1981 to the date of the letter, the date of the agreement and even to the time of surrender. Yet Fruehauf knew the trailers were in use. The turnover provisions of the agreement are drawn specifically with this knowledge and took it into consideration. At the same time Fruehauf set no condition for the surrender of the trailers. If all seventy (70) had been surrendered on one day, it obviously would have been within the terms of the agreement.

All of this compels the conclusion that the side letter values took into account the use of the vehicles up to the time debtor surrendered them. The general condition of the trailers then was anticipated. Alternatively Fruehauf simply failed to guard against an obvious risk, i.e., that the trailers would be run hard and might not meet the conditions of the sample group. Compare *In re Callister,* supra, at 530. In either instance Fruehauf had the ability to guard against such a loss and failed to do so.

The Court notes that evidence is ambiguous as to whether the sale shortfall is a result of trailer condition alone. Fruehauf's witness testified that the market had fallen about 5% over the six months from filing to repossession. This alone would account for a $50,000 shortfall. In addition, since the appraisals are only best estimates and not fixed in concrete, there never was a guarantee that the trailer would bring what Fruehauf expected. One reason the corporate personnel discounted the November valuations is because they were concerned that the Springfield area could not sustain a sale of so many units. This could have contributed to the shortfall even more than Fruehauf anticipated. As it was Fruehauf did buy several trailers itself. The Court concludes, therefore, that most of the balance of the shortfall may not be allowed as a superpriority because the settlement agreement does not protect against loss of value from usage and does not contemplate loss of value from usage and because the evidence that the loss of value was attributable to use alone is not persuasive.

Prime agreed, as part of the settlement, to repair the trailers "acceptable to Fruehauf". This was not done. Fruehauf is entitled to those expenses itemized in work orders 184–586691, 184–586697, 184–586689, 184–586700, 184–586695, 184–586698 and 184–586782 except that the cost of removing the Prime "logos" is not allowed. The cost of that work was deducted from the appraised values.

Fruehauf is granted to January 20, 1983 to make claim, in accordance with the orders herein, for superpriority allowance. The balance of the claim is allowed as an unsecured claim, in addition to the amended claim heretofore filed. ·