**In re JAMES B. DOWNING & COMPANY, Debtor.**

**Bankruptcy No. 85 B 14986.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 20, 1988.

On Motion to Alter or Amend Dec. 1, 1988.

---

See also, Bkrtcy., 74 B.R. 906.

J. Barton Kalish & Colleagues, Chicago, Ill., for debtor.

Malcolm M. Gaynor, Richard Bendix, Bruce Dopke, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for M.E. Franks.

Towbin & Zazove, Chicago, Ill., for Unsecured Creditors Committee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion for summary judgement and other relief filed by the statutory committee of unsecured creditors (the "Committee") for the estate of James B. Downing & Co. ("Downing") and joined in by the Downing estate pursuant to Federal Rules of Bankruptcy Procedure 3007, 7012, 7056 and 9014 and Federal Rules of Civil Procedure 12(b), 12(b)(6), 56(b), 56(c), and 56(d), with respect to the 11 U.S.C. § 507(b) claim of M.E. Franks, Inc. ("Franks"). For the reasons set forth herein, the Court having considered all the pleadings, affidavits and exhibits filed, does hereby grant the Committee's motion for summary judgment.[1]

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334

---

**1.** Rule 12(e) of the General Rules of the United States District Court for the Northern District of Illinois adopted by General Order of this Court dated May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. Rule 12(f) requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the nonmoving party's Rule 12(f) statement fails to deny the facts set forth in the movant's statement, those facts will be "deemed admitted." Downing has filed a detailed 12(e) statement. Franks has failed to file a 12(f) statement. Thus, the facts stated in Downing's 12(e) statement are deemed admitted.

and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (O).

## II. FACTS AND BACKGROUND

On November 4, 1985, Downing filed a Chapter 11 petition. Prior to the commencement of the case, Downing owned a parcel of real property located at 55 N. Mayflower Road, Lake Forest, Illinois (the "Mayflower Property"), which Downing used as its corporate headquarters. The River Forest State Bank and Trust Company (the "Bank") held a first mortgage on the Mayflower Property in the principal amount of $1,500,000 arising from a note dated January 18, 1983. As of the date of filing, the Bank's aggregate claim was $1,480,435.48. On April 16, 1985, a note in the original principal amount of $217,000,00 was executed, which was secured by granting Franks a second mortgage on the Mayflower Property. When the case was commenced Downing owed $133,400 on that note. Franks was granted the mortgage to secure a business loan.

Shortly after the commencement of the case, the Mayflower Property was vacated. On January 10, 1986, Downing filed a motion to employ a real estate broker for the purpose of listing and selling the Mayflower Property. Thereafter, on January 29, 1986, Franks and the Bank filed a "Joint Motion of M.E. Franks, Inc. and River Forest State Bank and Trust Company to Compel Sale of Real Property, for Adequate Protection and for Other Relief". The motion was predicated upon Section 363(e) of the Bankruptcy Code. The motion was opposed by Downing and the Committee for the reason that there was a large equity in the Mayflower Property which adequately protected the claims of Franks and the Bank. At the time of the requested adequate protection, Franks' claim was apparently oversecured.

Subsequently, on January 31, 1986, the Court entered an order with Franks' consent, authorizing the employment of J–H Kahn Realty, Inc. ("J–H Kahn") as a real estate broker to sell the Mayflower Property. The motion filed by Franks and the Bank was dismissed as moot.[2] A prepetition appraisal prepared by Downing's agents valued the Mayflower property at $3,260,000. Accordingly, the Mayflower Property was listed for sale at that amount with Franks' consent.

At the January 31, 1986, hearing, Franks requested that the Court include a provision in the Order which would require Downing to inform Franks of any offers made with respect to the Mayflower Property. The request was opposed by Downing and the Committee. The Court denied Franks' request. However, the Court cautioned Downing with respect to its fiduciary obligation to Franks and to other creditors to disclose any offers made.

During the ensuing months, three inquiries were received for the Mayflower Property. However, these interests were not pursued because none of these parties submitted an acceptable offer in terms of financing. Moreover, none of these interested parties exhibited the ability to make an offer for an amount that would have provided sufficient funds to satisfy real estate taxes, a broker's commission, the Bank's claim and Franks' lien claim.

On October 8, 1986, the Bank moved to terminate the automatic stay pursuant to section 362. Franks opposed the motion. On November 19, 1986, over Franks' objection, a compromise was reached which provided as follows: 1) the stay was lifted to permit the Bank to commence foreclosure proceedings; 2) Downing retained the right to market the property until the later of four months, or the date of any sheriff's sale conducted by the Bank; and 3) the Bank would pay the estate $25,000 and pay all future expenses of the Mayflower Property. Thereafter, on February 23, 1987, Franks and the Bank obtained a joint judgment of foreclosure.

---

**2.** The Honorable Robert E. Ginsberg was originally assigned the case when it was filed in 1985. Thereafter, the case was reassigned to this Judge on February 9, 1988.

On January 23, 1987, Downing accepted a purchase offer for the Mayflower Property from Barry J. Carroll. Subsequently, in March 1987 the Mayflower Property was sold for $2 million. The sale closed on May 8, 1987, and the proceeds were distributed as follows:

| | |
|---|---:|
| Taxes | $ 46,119.54 |
| Tile insurance | 1,935.00 |
| Recording fees | 2,028.00 |
| Water | 258.85 |
| Bank (principal and interest only) | 1,853,264.10 |
| Debtor for distribution to – brokers on their commission | 90,000.00 |
| – Bank for attorney's fees | 6,394.51 |
| Total | $2,000,000.00 |

Consequently, the sale proceeds were insufficient to satisfy any portion of Franks' claim. On September 8, 1987, Franks filed an application for the allowance and payment of a prepetition claim entitled to administrative priority under 11 U.S.C. § 507(b). Downing and the Committee both filed objections to Franks' claim to administrative priority.

## III. DISCUSSION

### A. *Standard for Summary Judgment*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hossman v. Spradlin*, 812 F.2d 1019, 1020 (7th Cir.1987).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). The Court finds that no genuine issue of material fact exists in this case.

Franks claims that its lien was rendered worthless because Downing chilled the market for offers on the Mayflower Property. Franks asserts that Downing's counsel J. Barton Kalish ("Kalish") told a real estate broker "not to waste her time with any offer of less than $2.5 million for the Mansion". Further, Franks claims that Kalish made similar remarks to brokers for Downing. Franks states that during the ensuing months that Downing tried to sell the Mayflower Property for an unrealistic market price, the real estate taxes and the interest on the Bank's senior mortgage eroded Franks' claim.

Franks alleges that on February 15, 1986, Natalie Rosenberg ("Rosenberg") and Peter Juneau ("Juneau") both of J–H Kahn received a telephone call from Nancy Hiser ("Hiser") a broker with Koenig and Stray. Hiser told Rosenberg and Juneau that she had shown the house to Mr. & Mrs. Vernon Loucks. Franks further alleged that Hiser told Rosenberg and Juneau that Mr. & Mrs. Loucks had the

means to purchase the Mayflower Property. Rosenberg and Juneau telephoned Kalish at his home. Kalish agreed to speak to Hiser and authorized Rosenberg and Juneau to give Hiser his home phone number. Hiser spoke to Kalish and allegedly Kalish stated that Hiser should not waste her time with an offer of less than $2.5 million. In addition, Kalish allegedly told Rosenberg and Juneau that an offer of less than $2.5 million would be a waste of time.

In support of its motion for summary judgment, the Committee submitted Kalish's affidavit. In the affidavit, Kalish denies telling a real estate broker or any other person that making an offer of less than $2.5 million would be a waste of time. Furthermore, Kalish states that he did not receive any verbal or written offers for the Mayflower Property from Hiser, Rosenberg, Juneau, or Mr. & Mrs. Vernon Loucks.

In addition, the Committee has offered the affidavit of William A. Brandt, Jr. ("Brandt"). Brandt was elected President of Downing on January 17, 1986. Brandt states in his affidavit that at no time was an offer to purchase the Mayflower Property transmitted to him by Hiser, Rosenberg, or Juneau. Moreover, Brandt states that he never communicated to Hiser or any other person that making an offer of less than $2.5 million would be a waste of time. Brandt claims that three people indicated that they were interested in purchasing the Mayflower Property but none of these people submitted an acceptable offer in terms of financing or other conditions.

Both of these affidavits are unrebutted. Franks' mere allegations that the above statements were made are insufficient to create a genuine issue of fact so as to preclude the entry of summary judgment. Franks has not filed counter-affidavits of any of the brokers who allegedly were told these statements by Kalish. Rather, Franks merely alleges that these statements were made.

Rule 56(e) addresses this problem and provides, in part:

When a motion for summary judgement is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial....

Fed.R.Civ.P. 56(e).

Franks has not produced a counter-affidavit showing that in fact Kalish made statements to the brokers concerning the price acceptable for a bid on the Mayflower Property. The lack of specific facts supporting or rebutting this point creates no material issue of fact, and thus will not preclude the entry of summary judgment.

B. *11 U.S.C. § 507(b)*

Franks alleges that its claim should be afforded an administrative priority under section 507(b). Section 507(b) provides as follows:

If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

Section 507 defines those expenses and claims against an estate that are entitled to priority in a bankruptcy proceeding. The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors. Thus, statutory priorities must be narrowly construed. *Joint Industry Board v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968); *see also Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984). "To give priority to a claimant not clearly entitled

thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer." *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir.1976). Section 507(b) provides that when adequate protection has been given to a secured creditor and such proves to be inadequate, the creditor becomes entitled to a superpriority administrative expense claim to the extent that the proffered adequate protection was insufficient. *In re Mutschler*, 45 B.R. 494, 496 (Bankr.D.N.D. 1984).

In order for Franks' claim to be allowable under section 507(b) two conditions must be met: (1) Franks must have been provided adequate protection for its lien interest in the Mayflower Property pursuant to sections 362, 363, or 364; and (2) the adequate protection approved by the Court must later be proven to be inadequate. *In re Smith*, 75 B.R. 365, 369 (W.D.Va.1987).

■ A superpriority claim pursuant to section 507(b) is predicated upon the express granting of adequate protection to the creditor. The absence of any order granting Franks adequate protection prevents it from being judged inadequate. Congressional Statements to the Reform Act of 1978 pertaining to section 507(b) state: "Subsection (b) provides that to the extent adequate protection of the interest of a holder of a claim proves to be inadequate, then the creditor's claim is given priority over every other allowable claim entitled to distribution under section 507(a)." 124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978); S17411 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

The superpriority of section 507(b) "was intended to capture value unexpectedly lost during the course of a case." *In re Callister*, 15 B.R. 521, 528 (Bankr.D.Utah 1981), *appeal dismissed*, 673 F.2d 305 (10th Cir. 1982). In addition, section 507(b) is "a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' ... may later prove inadequate." *In re Ma-*

*rine Optical, Inc.*, 10 B.R. 893, 894 (1st Cir.BAP 1981).

On January 31, 1986, Franks' "Joint Motion to Compel Sale of Real Property, for Adequate Protection and for Other Relief" was dismissed as moot. The Order of January 31, 1986, is silent on the issue of adequate protection. Thus, Franks was never provided adequate protection in any form by order of this Court. It therefore follows that if no adequate protection was provided such alleged protection could not be insufficient. Accordingly, a claim pursuant to section 507(b) could not arise.

Franks principally argues that a section 507(b) claim should be granted even though no order granting adequate protection has been entered. In support of such position, Franks cites *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1451 n. 23 (9th Cir.1985). In a footnote that court opined:

Section 507(b) addresses the situation where the debtor in possession initially provides protection that, after the fact, turns out to be inadequate. In Owens–Corning's case, Center never provided protection in the first place. Therefore, although not literally within the provisions of section 507, Owens–Corning's injury is clearly within its spirit and deserves to be remedied by granting its claim a superpriority. *Cf. In re Prime*, 35 B.R. 697 (Bankr.W.D.Mo.1984) (secured creditor is entitled to a superpriority under section 507(b) even though debtor had previously entered into a settlement with the creditor instead of proving to the court that debtor could adequately protect the creditor's interest).

759 F.2d 1440, 1451 n. 23.

The above-referenced case as well as the *Prime* case cited therein, seem to comprise a minority approach that a creditor need not be provided an express grant of adequate protection by order of court to be afforded a superpriority claim under section 507(b). This Court does not agree with nor subscribe to this particular view. To the contrary, the learned Judge Ginsberg has noted in his treatise on bankruptcy:

The first superpriority claim arises when a secured creditor seeks adequate protec-

tion in connection with the automatic stay, the use of collateral, or the funding of a bankruptcy estate, (footnote omitted) *and is granted such protection by the court.* If the adequate protection given by the court proves to be inadequate, that is, the secured creditor winds up being injured from the continuation of the stay, use of the property, of funding of the estate in the sense that its unsecured deficiency claim against the estate is·increased, the creditor is entitled to a superpriority for the increase in the deficiency.

Ginsberg, *Bankruptcy* ¶ 10,705 (1986) (emphasis added).

The Court finds that there is no case directly on point in the Seventh Circuit or the Northern District of Illinois. Accordingly, this Court will therefore follow Judge Ginsberg's view. It appears from the majority of authorities outside this circuit and district that the granting of some form of adequate protection by court order is a prerequisite to a claim of priority under section 507(b). *See In re Blehm Land and Cattle Co.*, 71 B.R. 818, 823 (D.Colo.1987).

In *In re Mutschler*, 45 B.R. 494, 496 (Bankr.D.N.D.1984) the court stated: "Section 507(b) simply provides that where adequate protection has been extended to a secured creditor and later proves to be inadequate, the creditor then becomes entitled to a superpriority administrative ·expense claim to the extent that the proffered adequate protection was insufficient." 45 B.R. at 496. Additionally, *In re Colter, Inc.* 53 B.R. 958, 960 (Bankr.D.Colo.1985) provides: "Thus, in order to have a superpriority claim, the creditor must first have an administrative priority claim, as defined in 11 U.S.C. § 507(a)(1), and that claim must have arisen due to some failure in the adequate protection." 53 B.R. at 960. Still another case that involved a court order affording a creditor adequate protection is *In re Blackford Farms, Inc.*, 68 B.R. 639 (Bankr.N.D.Iowa 1986). There the court cites *Mutschler* following that case's reasoning that adequate protection is a prerequisite to a section 507(b) claim. *In re McGill*, 78 B.R. 777, 780 (Bankr.D.S.C. 1986) further supports the proposition that

a grant of adequate protection must have been afforded a creditor in order for a section 507(b) claim to arise. All of these cases involved a court order approving a grant of adequate protection.

Franks argues that even if the law requires a granting of adequate protection, the Court did not deny such but rather, found that Franks was adequately protected by an equity cushion. Franks claims that the denial of its section 363(e) motion was not a denial of adequate protection. This argument is disingenuous and not persuasive. That motion was denied as moot by Judge Ginsberg and no court order of adequate protection was given Franks. Furthermore, the Court never made a finding that an equity cushion existed.

### C. *11 U.S.C. § 503*

■ Franks further argues that section 507(b) confers superpriority status upon claims that are allowable under section 503(b)(1)(A). Franks alleges that Downing's use of the Mayflower Property to realize upon its equity in same gave rise to a section 503(b)(1)(A) claim. Administrative claims under section 503(b)(1)(A) must arise from post-petition "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Franks' claim must comport with the language and underlying purposes of section 503 or it will fail. *See In re Chicago, Milwaukee, St. Paul & Pacific Railroad*, 658 F.2d 1149, 1163 (7th Cir.1981) *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) (general rule is equality of distribution; deviation must appear in the statute).

This argument is rejected because Franks advanced no post-petition costs or expenses or new credit to preserve the estate. *Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984); *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987). The *Jartran* case sets forth two elements that must be met before a section 503(b)(1)(A) administrative claim can arise. The claim must arise from a transaction with the debtor and must be beneficial to the debtor in the operation of its business.

732 F.2d at 587. The Court does not agree that Franks has fulfilled the *Jartran* test.

*In re Advisory Information and Management Systems*, 50 B.R. 627 (Bankr. M.D.Tenn.1985), denied a secured creditor an administrative priority. The court held that section 503(b)(1)(A) could not be used to recover the depreciation of collateral between the dates of filing and repossession. In that case, the creditor never sought adequate protection. The court stated that "[t]here is nothing in § 503 remotely suggesting that administrative expense priority was intended as an optional remedy to adequate protection of a secured claimholder's interest in property of the estate." 50 B.R. at 630. *See also In re Briggs Transportation Co.*, 47 B.R. 6 (Bankr.D.Minn. 1984). Therefore, section 503(b)(1)(A) cannot be invoked by Franks in this case as an alternative route through which its effectively unsecured junior mortgage claim can be elevated to superpriority status under section 507(b).

### D. *11 U.S.C. § 506*

■ Under section 506(a), every secured claim is potentially bifurcated into two claims: a secured claim to the extent of the value of the creditors' interest in the estate's interest in the property and an unsecured claim to the extent that the creditors' total allowed claim exceeds the amount of its secured claim. In this case, there was no valuation hearing sought or held under section 506(a) to determine the value of the secured portion of Franks' junior mortgage claim nor any court order fixing some means of adequately protecting that secured portion of Franks' claim under sections 361, 362, 363 or 364. *See* Senate Report to the Reform Act of 1978, S.Rep. No. 95–989, 95th Cong., 2d Sess. 67–68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. To the contrary, the subsequent sale of the property established a value which was sufficient only to cover the principal amount of the Bank's oversecured first mortgage, interest accrued thereon through sale and the attendant costs and expenses pursuant to section 506(b). As a result of the sale under provisions of section 506(a) and (b), Franks' jun-

ior mortgage claim, although potentially secured in whole or in part, effectively became fully unsecured.

To follow Franks' line of argument that its claim automatically advanced to superpriority status under section 507(b) would ignore the provisions of section 506 and reach a result which Congress never intended. The results would be that all undersecured claimants whose claims were not afforded some form of adequate protection by order of court after notice and hearing would be transformed into section 507(b) priority status because their claims turned out to be unsecured in whole or in part. Such result would render section 506(a) meaningless. This Court concludes that Congress did not intend for such a result to obtain in this case and therefore rejects Franks' arguments.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby grants the Committee's motion for summary judgment. Franks' claim is denied priority status under section 507(b) and is effectively relegated to unsecured status under section 506(a).

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.

### ON MOTION TO ALTER OR AMEND

This matter comes before the Court on a motion filed by M.E. Franks, Inc. ("Franks") pursuant to Federal Rules of Bankruptcy Procedure 8002(b)(2), 8002(b)(3) and 9023, incorporating Federal Rule of Civil Procedure 59 to alter or amend the Court's Memorandum Opinion and Order dated July 20, 1988 ("Opinion"). For the following reasons the Court will not amend the Opinion and accordingly denies the motion.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334

and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (O).

## II. FACTS, BACKGROUND, AND SUMMARY OF THE PARTIES' ARGUMENTS

On July 20, 1988, the Court entered the Opinion granting the Creditors' Committee's ("Committee") motion for summary judgment on its objection to Franks' claim being afforded priority status pursuant to 11 U.S.C. § 507(b). The Opinion was docketed on August 2, 1988. Franks requests that the Court amend the Opinion for three reasons: the Court erred when it treated the Committee's motion as a Rule 56 motion for summary judgment; the Court erred when it held that Franks did not have a section 507(b) claim because the Court had never entered an order granting adequate protection to Franks and; the Court erred when it found that Franks did not have an administrative claim against the estate.

Moreover, Franks has requested pursuant to Bankruptcy Rule 8002(b)(2) that the Court make the following additional findings of fact:

(1) The liquidation value of the Downing Mansion ("Mansion") was not less than $2,000,000 on November 4, 1985;

(2) Franks' requested that Judge Ginsberg enter an order adequately protecting Franks' interest in the Mansion;

(3) Franks was entitled to adequate protection of its interest in the Mansion;

(4) Franks was granted adequate protection by Downing and the Court implicitly approved said grant;

(5) Downing voluntarily attempted to realize upon its equity in the Mansion, obtained court leave to do so and Franks was a party to the transaction; and

(6) The proceeds of the sale of the Mansion were used to pay expenses of administration including $41,000 in post-petition maintenance expenses of the Mansion, $67,902.18 in post-petition real estate taxes which accrued on the Mansion, $5,000 in sale costs and $90,000 final compensation pursuant to 11 U.S.C. § 330 to the real estate brokers employed by the estate.

The Committee's response in opposition to Frank's motion asserts that the procedural disposition utilized to decide Frank's claim was irrelevant because the claim was defective as a matter of law and the result reached by the Court was correct. The Committee also asserts that Franks' motion is inappropriate in that it is an attempt to relitigate the case and quarrel with the conclusions of the Court. Further, the Committee contends that Franks fails to show any manifest errors of law or fact. Moreover, the Committee asserts that Franks' proposed additional findings of fact are incorrect, irrelevant or both. The Court agrees with the Committee's contentions. Franks' motion is an attempt to reargue its case to the Court.

## III. DISCUSSION

### A. Federal Rule of Civil Procedure 59

Federal Rule of Civil Procedure 59 provides a procedure whereby the court can correct manifest errors of law or fact or consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications*, 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D.Ill.1982) *aff'd*, 736 F.2d 388 (7th Cir. 1984); *F/H Industries v. Nat. Union Fire Ins. Co.*, 116 F.R.D. 224 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new theory. *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Evans v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D. Ill.1976). The Court concludes that it made no manifest errors of law or fact as discussed below. Moreover, no newly-discovered evidence has been proffered by Franks.

### B. The Committee's Motion For Summary Judgment Should Have Been Treated As A Motion Made Pursuant To Federal Rule of Civil Procedure 12(b)(6)

The first argument raised by Franks is that the Committee's motion should have

been treated as a motion to dismiss pursuant to Bankruptcy Rule 7012 incorporating Federal Rule of Civil Procedure 12 ("Rule 12(b)(6)"). The motion filed by the Committee was styled as a "Motion For Summary Judgment and for Other Relief". The motion was originally presented before the Honorable Robert E. Ginsberg who was assigned the case from its inception. The moving papers of the parties were substantially focused on summary judgment relief. Two affidavits were filed pursuant to the motion for summary judgment by William A. Brandt, Jr. ("Brandt") and J. Barton Kalish ("Kalish"). On January 29, 1988, at a hearing on an emergency motion Judge Ginsberg stated, "I would not consider the affidavits. I won't go outside of the record. We'll keep it 12(b)(6)." Thereafter, on February 9, 1988, the case was reassigned to this Judge.

Pursuant to Judge Ginsberg's statements and notwithstanding the fact that the Committee's motion was styled a motion for summary judgment, the Court could have, out of fairness to the parties, treated the matter only as a Rule 12(b)(6) motion. Accordingly, under that procedural device, the Court will not consider the Brandt and Kalish affidavits in its determination of the Rule 12(b)(6) portion of the Committee's motion. However, the Brandt and Kalish affidavits and the lack of counteraffidavits from Franks were not outcome determinative in any event to the result reached.

The Court notes that both parties in their original moving papers made confusing references to Rule 12(b)(6) and certain case law pertaining thereto. Neither party took the time to attach and furnish to the Court the all-important transcript of the hearing at which Judge Ginsberg decided to treat the Committee's motion as a Rule 12(b)(6) motion. The claimed error could have been alleviated if either party had bothered to furnish the Court a copy of the transcript prior to the instant motion. Moreover, Judge Ginsberg's statements were not reduced to an Order which the Court would have been obliged to follow as the law of the case. Franks has cited no authority that the Court was obliged to procedurally

view the Committee's motion as Judge Ginsberg determined he would treat it. However, the Court finds that because Franks is not entitled to relief pursuant to section 507(b) as a matter of law, there is no difference in the results reached between granting the Committee's motion pursuant to Rule 56 or Rule 12(b)(6).

When a court considers the sufficiency of a complaint to withstand a motion brought pursuant to Rule 12(b)(6), it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, a court must take as true all well pleaded material facts and must view these facts and all reasonable inferences which may be drawn from them, in a light most favorable to the plaintiff. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414 (7th Cir.1986); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied.* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

The Court finds that Franks' claim to status under section 507(b) must be denied because Franks can prove no set of facts that would entitle it to the administrative priority of the relief requested as a matter of law. The Court finds that the legal position advanced by Franks for section 507(b) treatment of its claim possesses no viability, and therefore, the Court will not grant Franks a trial on its claim. Had the Court initially decided the Committee's motion solely under Rule 12(b)(6), the end result would remain the same, and Franks' claim to administrative priority status would be denied.

C. *The Court Will Not Make The Additional Findings Of Fact That Franks Has Requested*

1. *The Liquidation Value of the Mansion*

Franks has asked the Court to make several additional findings of fact from those contained in the Opinion. First, Franks has requested that the Court make a determination that the value of the Man-

sion was $2,000,000.00 on November 4, 1985. The Court finds that there is no basis in the record for such a finding. The Court is precluded from presuming that facts outside of the pleadings are true for purposes of a Rule 12(b)(6) motion. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984); *Westland v. Sero of New Haven, Inc.*, 601 F.Supp. 163, 166 (N.D.Ill.1985). In its original section 507(b) application, Franks failed to allege that the Mansion was valued at $2,000,000.00.

Franks requests that the Court make such a finding by drawing an inference regarding the liquidation value based on a pre-petition appraisal value of $3,260,000.00 and the post-petition $2,000,000.00 gross sale price in March 1987. The Court will not now make a finding of what the Mansion's value was in November 1985. No prior request for valuation was made of either this Judge or Judge Ginsberg under section 506(a) at or prior to the disposition of the Mansion. It would be sheer speculation to make such determination now by hindsight based only upon a hearsay pre-petition appraisal and the actual gross sale price of the property which closed almost a year-and-a-half after the valuation date sought.

### 2. Franks Failed to Receive an Order for Adequate Protection

Franks asks that the Court make a finding that on January 29, 1986, pursuant to the "Joint Motion to Compel Sale of Real Property for Adequate Protection and for Other Relief" (the "January 29, 1986 motion"), Judge Ginsberg entered an order adequately protecting Franks' interest in the Mansion. As the Court stated in the Opinion, no adequate protection was ever afforded to Franks. As a matter of record and undisputed fact, on January 31, 1986, the January 29, 1986 motion was dismissed as moot. The order of dismissal is silent on the issue of adequate protection. The Court will not reiterate those portions of the eighteen-page Opinion which adequately dealt with this issue finding that Franks failed to receive an Order that it be afforded adequate protection. The lack of such an order is critically fatal to Franks' position in this matter.

Franks takes the position that the Order for employment of real estate brokers with the acquiescence of Downing's counsel amounts to a grant of adequate protection. The mere fact that real estate brokers were employed to sell the Mansion does not in any way constitute the granting of adequate protection. Furthermore, Franks would like the Court to infer that Judge Ginsberg's mention of an equity cushion constitutes a grant of adequate protection. To the contrary, the record is very clear that Franks was never provided periodic payments or replacement liens or any other form of adequate protection under section 361 for its second mortgage on the Mansion. The Court will not infer what Judge Ginsberg may or may not have understood regarding Franks' claim when he ordered employment of real estate brokers and denied its motion as moot.

### 3. Franks May Have Been Entitled to Adequate Protection But Failed to Pursue and Receive It

Franks would like the Court to make a finding that it was entitled to adequate protection. The Court declines to make such a determination after the fact when Judge Ginsberg made no such finding or award in favor of Franks. In order to make such a determination, had he been asked prior hereto, Judge Ginsberg could have conducted a valuation hearing to determine both the value of the Mansion and the respective lien or secured claims encumbering same pursuant to *Barash v. Public Finance Corp.*, 658 F.2d 504, 512 (7th Cir.1981), and then awarded some form of adequate protection by court order in favor of Franks. As previously discussed, the Court is in no position at this time to make such a finding, nor is such a finding warranted.

Franks' undersecured and virtually unsecured claim in the final analysis cannot now be enhanced post-petition. *See In re Smithfield Estates, Inc.*, 48 B.R. 910, 914–915 (Bankr.D.R.I.1985). Because Franks failed to make a timely motion to renew its request for adequate protection, to modify

the automatic stay, or to have its secured interest in the Mansion valued under the method contained in section 506(a), there was no need to determine the liquidation value of Franks' second mortgage at the time the Mansion was sold in 1987.

4. *The Court Did Not Implicitly Approve A Grant Of Adequate Protection and the Debtor Did Not Provide Same*

The Court rejects Franks' argument that it was implicitly granted adequate protection and regards same as disingenuous. The Bankruptcy Code and case law as cited in the Opinion interpreting such makes no mention of implicit grants of adequate protection. Franks was never provided with any court order for adequate protection and Downing never consensually agreed to provide same. Hence, if there was no express grant of adequate protection there was no implicit approval thereof by Judge Ginsberg. The Court has already discussed this issue in the Opinion and the rationale and authorities contained therein speak for themselves and will not be repeated.

5. *Downing Did Not Attempt To Realize on Its Equity in the Mansion*

Franks asks the Court to find that Downing itself attempted to realize upon its equity in the Mansion and the Court allowed such, therefore, giving rise to a section 503(b)(1) claim. The Court adequately discussed this issue in the Opinion and thus will stand on the cited authority and rationale set forth therein rejecting this argument. There was no real equity in the Mansion for either Downing or Franks. Franks advanced no post-petition costs, expenses or new credit to the estate. Thus, its claim is not entitled to section 503(b)(1)(A) treatment.

6. *The Disposition and Disbursement of the Mansion Sales Proceeds Were Not Disputed Nor In Issue Between the Parties*

The original moving papers filed by both Franks and the Committee undisputedly disclosed the disbursement of the Mansion sale proceeds which is summarized at page five of the Opinion. The additional categorization and breakdown of same requested by Franks is unnecessary and not dispositive on the issues raised. Accordingly, the Court declines to make such additional finding.

## IV. CONCLUSION

Franks takes issue with the rationale of the Court's decision and its reliance on certain case authority cited therein. The Court need not and will not reiterate its discussion of the case law it relied on in making its decision. However, the Court has careful reread and reviewed all cases cited by both parties and is still of the opinion on the ultimate issue decided in this matter that the express granting of some form of adequate protection by either consensual agreement between the debtor and the creditor or court order is a prerequisite to a claim of administrative priority status under section 507(b).

For the foregoing reasons, the Court hereby denies Franks' motion to alter or amend the Memorandum Opinion and Order dated July 20, 1988.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.